# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

FRANCES C. CHANDLER,
Individually and as a Representative
of a Class of Similarly Situated
Persons,

       Plaintiff,

v.                                                            Civil No. 01-749 LH/DJS

PFL LIFE INSURANCE COMPANY,
et al,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff's Motion to Remand, filed September 6, 2001 **(Doc. 11)**. This is a proposed class action by a group of individuals insured under group hospital-benefit heath insurance policies sponsored or underwritten by Defendants insurers who are accused of misrepresentation in their sales brochures and improper claims handling. Plaintiff ("Chandler") filed the original complaint in state court on January 12, 2001, and the amended complaint on June 1, 2001.

Defendants removed the case on June 28, 2001 on the basis that Plaintiff had established domicile in Arizona for purposes of diversity at the time she filed the complaint. In the instant motion, Plaintiff challenges the removal under 28 U.S.C. § 1447(c), maintaining that she is – and has been at all material times – a resident of Taos, New Mexico, and that the removal is untimely. Defendants not only dispute Plaintiff's asserted domicile, but in the event the Court finds Plaintiff is in fact a resident of New Mexico, that federal jurisdiction still exists because one of the

Defendants has been fraudulently joined to destroy diversity.

*Timeliness of Removal*

Removal of this case was timely. Under Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999), the thirty-day time period to remove a case under 28 U.S.C. § 1446(b) does not begin until actual service of the complaint. The Supreme Court specifically noted that informal knowledge of the complaint is not sufficient to start the clock running. In this case, informal knowledge would include defense counsel's receiving a copy of the state court complaint that was filed January 12, 2001, provided in preparation of settlement discussions to be held in this and related cases. See Pltff's Ex. C. Defendants were not actually served until after the filing of the amended complaint, on June 1, 2001, which is less than thirty days before the notice of removal was filed.

*Domicile*

Defendants are asserting federal jurisdiction and therefore have the burden of proof. State Farm Mutual Automobile Ins. Co. v Narvaez, 149 F.3d 1269, 1271 (10th Cir. 1998). Because the federal courts are courts of limited jurisdiction, Defendants' assertions are up against a presumption that diversity jurisdiction does not exist. Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir.1974); Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995) (noting presumption against removal jurisdiction).

Establishment of new domicile, for diversity jurisdiction purposes, is determined by two factors: residence in a new domicile and an intention to remain there. 28 U.S.C.A.§1332; Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989). Plaintiff contends that she has always considered Taos her home, having owned residences there since 1982, and having

moved there "permanently" since 1988. Pltff's Ex. A. Chandler acknowledges that she owns two residences, one in Taos and one in Tucson, but notes that she has had a bank account and post office box in Taos since 1982; has a current New Mexico driver's license and a car that is registered in New Mexico; has been licensed as a New Mexico real estate broker since 1992 and is currently licensed; and is currently registered to vote in New Mexico. In looking to see whether the circumstantial facts support Chandler's stated intent, see Walden v. Broce Construction Co., 357 F.2d 242, 244 (10th Cir.1966) (the "mere mental fixing of citizenship" is not sufficient),[1] I use a "totality of the evidence" approach as well as relevant state law. See, Cressler v. Neuenschwander et al, 930 F.Supp.1458, 1459 (D.Kan. 1996); Rishell v. Jane Phillips Episcopal Mem'l Center, 12 F.3d 171, 172-74 (10th Cir. 1993).[2]

Defendants argue that Plaintiff's physical presence in Arizona is substantial enough to have effected a change in domicile, regardless of her stated intent. They point out that Chandler voted there one time in the recent general election which by law revokes her New Mexico residency status; that language on the deed of Chandler's Arizona townhome attests to her

---

[1] Defendant's reliance on Walden for the proposition that the district court can ignore the undisputed testimony of a party asserting domicile in Texas is misplaced. The facts in that case were inconsistent with plaintiff's testimony. Such is not the case here. I also find it curious that Defendants characterize Plaintiff's affidavit as self-serving (as most affidavits are): Plaintiff cannot be accused of taking up residence in Arizona in order to either create or destroy diversity, since she is not seeking the jurisdiction of this Court.

[2] These are some of the factors which are considered in determining a party's intent: where an individual lives and votes; whether her family and dependents have moved to the new residence; whether the individual's belongings and affiliations (social, professional, religious) are in the new domicile; whether investments in local property attach to the former residence. See Cressler, 930 F.Supp. at 1459 (mentioning District of Columbia v. Murphy, 314 U.S. 441 (1941)).

3

residency in that state; and that Plaintiff spends much of her time in Arizona.

Plaintiff purchased a townhome in Tucson in 1998 and spends part of the year "off and on" in Tucson to avoid extremely cold winters [3] and to help her daughter care for her new grandchild while the daughter attends real estate school. Defts' Ex. B, at 8-9, 210. These absences from New Mexico do not necessarily effect a change in her domicile. See Walden, 357 F.2d at 244 (ctizenship is not necessarily lost by protracted absence from home, where the intention to return remains). There can only be one domicile for diversity purposes, the operative word being "domicile," not "residence." See Kaiser v. Loomis, 391 F.2d 1007, 1009 (6th Cir. 1968) ("domicile once acquired is presumed to continue until it is shown to have been changed") (citation omitted)). While a person may have more than one residence, he can only have one domicile. Bank One, 964 F.2d at 52. Thus, Chandler's use of the word "live" or "residence" in her deposition testimony reflects a layman's use of those words and is certainly not indicative of where her domicile is located.[4]

Similarly, the purpose of the standard language in the deed of trust for Plaintiff's Arizona townhouse which provides that the purchaser will use the property as a "principal residence,"

---

[3] Chandler explained that her "titanium arm hurt too bad" in the Taos winters. Defts. Ex. B at 8.

[4] Cases in which a court has found that a move to another residence amounted to a change in domicile involve actions or absence of actions by the individual which more definitively supported an intent to change, quite unlike the facts before the Court in the instant case. Cmp., e.g., Leavitt et al v. Scott, 338 F.2d 749, 751 (10th Cir. 1964) 751 (family belongings moved to diverse state; house in nondiverse state leased until sold; change of jobs and locale to diverse state made with intent for permanent change upon medical advice for health benefit); Marcotte et al v. State Farm Fire & Casualty Co. et al, 4 F.Supp.2d 1280, 1283 (D.Kan. 1998) (no evidence of plaintiff ever voting or registering to vote in putative domicile and no evidence of owning rather than renting a residence in that state).

Defts' Ex. A at 3, is to preclude certain unwanted uses of that property for the lender's benefit – not to establish jurisdictional domicile. Further, the signing of a document containing such non-negotiable, boilerplate language does not overcome Plaintiff's clearly stated intent in her affidavit. Chandler's Taos residence also inherits a presumption which favors an established domicile over a newly acquired one. Cressler, 930 F.Supp. at 1460; Lew v. Moss, 797 F.2d 747, 751 (9th Cir.1986); see also Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992) ("domicile once acquired is presumed to continue until it is shown to have been changed") (citation omitted). Her protracted visits to Tucson to be with her daughter and grandchild and escape some of the Taos winters are not evidence that her domicile has changed, but rather are reasons why she goes to Tucson.

Plaintiff is retired, but still maintains her New Mexico real estate broker's license and apparently still makes some use of it, with her son helping her out with some business she still conducts. Defts' Ex. B at 14.

Defendants make much of the fact that Chandler registered to vote and voted in Arizona's November 2000 general election, relying on an Arizona statute that requires a declaration of residency ("physical presence in this state . . . combined with an intent to remain") in order to register to vote. Ariz. Rev. Stat. § 16-101 (2000). Because the statute does not provide a basis upon which to apply that definition of "resident" to anything more than voting, casting her vote in Tucson did not necessarily cancel Plaintiff's residency in New Mexico for purposes of diversity jurisdiction -- even when following state law. According to the analogous New Mexico statute, N.M.S.A., 1978, § 1-1-7:

H. a person loses his residence in this state if he votes in another state in an

> election requiring residence in that state, and has not upon his return regained his residence in this state under the provisions of the constitution of New Mexico.

See Klumker v. Van Allred, 112 N.M. 42, 46 (1991). One of these provisions requires a voter to reside in New Mexico for one year, and in the precinct in which he offers to vote for thirty days, next preceding the election. Const. Art.7, § 1. However, Klumker suggested there might be possible situations where a person might not be held to those provisions: "[W]here a person already *has* such a significant physical presence in the place that he may be said to reside here, it may be open to question whether anything additional needs to be done, besides registering to vote, to qualify the place as his residence for voting purposes." Klumker, 112 N.M. at 46 (emphasis supplied). It is clear that Plaintiff's ongoing physical presence in Taos satisfied the state of New Mexico as to her residency status so that she was not required to re-register to vote in New Mexico after voting in Arizona, was still considered "active" in August of 2001, Deft's Ex. E, and in the same month was selected for jury duty in the Taos Magistrate Court, Pltff's Ex. E. See State v. Watkins, 92 N.M. 470 (Ct. App. 1979) (there is a similarity between residence for the purpose of voting and residence for the purpose of serving as a juror).

I find that Plaintiff's ties with Arizona did not effect a change in her domicile, and that the circumstances surrounding her dual-residences in Taos and Tucson corroborate her stated declaration and intent that Taos is her residence for purposes of diversity jurisdiction. Defendants have not met their burden of proving otherwise.

My finding that Plaintiff is a citizen of New Mexico necessitates my turning to Defendants' alternative argument: that Koziel, a named Defendant in this action and whose New Mexico residency is undisputed, was fraudulently joined.

*Fraudulent Joinder*

David Koziel is an insurance agent who sold Plaintiff the insurance policy which is at the center of the underlying controversy. Defendants contend that Koziel was joined for the sole purpose of defeating diversity. In viewing all disputed questions of fact and all ambiguities in the controlling law in favor of the Plaintiff on this issue, see Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir.), Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 n. 3 (2d Cir.1998), I find that Defendants have not shown by clear and convincing evidence that Plaintiff would not be able to establish a cause of action against Koziel in state court. See Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir.1962), cert. denied, 376 U.S. 949 (1964) (fraudulent joinder must be established by clear and convincing evidence).

An agent may be shielded from liability in certain contractual situations while acting in the scope of employment, but is personally liable for tortious acts he commits while acting on behalf of a disclosed principal. See Kreischer v. Armijo, 118 N.M. 671, 675 (Ct.App.1994). Such acts would include the alleged affirmative misrepresentations Koziel made to Chandler concerning "incomplete, inaccurate and misleading" sales brochures accompanying the insurance policies in question. Amended Compl., ¶¶ 18-25. The copy of Koziel's signature as Defendants' "authorized representative" on the initial premium receipt, Pltff's Ex. D, removes Koziel from the category of mere "passive conduit" for the insurer, cmp., Fitzgerald Forest Prods., L.P. v. Durand Raute Corp. of Oregon, 932 F.Supp. 293 (D.C.Ga. 1996) or as simply the insurer's adjuster, cmp., Tenner v. Prudential Ins. Co. of America, et al., 872 F.Supp. 1571, 1573 (E.D.Tx. 1994) (distinguishing from case at bar)). Whether or not Plaintiff prevails on the merits against Koziel, for purposes of this motion, I find that Defendants have not met their burden of establishing that

Chandler cannot recover against Koziel under state tort law, and thus cannot succeed in their claim that Koziel was fraudulently joined. [5]

*Attorneys Fees and Costs*

Plaintiff requests attorney fees and costs in connection with the instant motion. Under 28 U. S. C. § 1447( c) (as amended), an order remanding the case may require payment of just costs and actual expenses, including attorneys fees, incurred as a result of the removal. See Daleske v. Fairfield Communities, Inc., 17 F. 3d 321, 324 (10th Cir. 1994), cert. denied, 511 U. S. 1082 (1994). Such an award is discretionary with the Court, and bad faith need not be shown. Suder v. Blue Circle, Inc., 116 F. 3d 1351, 1352 (10th Cir. 1997)( citing Daleske, 17 F. 3d at 324-25). In this case, I consider the nature of the removal and remand to be one which required a factual balancing which would preclude my finding that it was necessarily improper for Defendants to remove the case. Plaintiff's request for fees and costs is denied.

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Remand (**Doc. 11**) is hereby GRANTED based on the foregoing findings;

**IT IS FURTHER ORDERED** that this action shall be remanded to state court in the First Judicial District Court for Santa Fe County, New Mexico.

_____
UNITED STATES DISTRICT JUDGE

---

[5] Fraudulent joinder cannot be proven merely because Plaintiff did not serve Koziel until after the first amended complaint was filed. Plaintiff's feasible explanation is that the complaint was amended for the very purpose of correcting the omission of Koziel from the original pleading. See Reply at 8, n.5.

A Judgment in accordance with this Memorandum Opinion and Order will issue.